IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DARRIN A. GRUENBERG,

                Plaintiff,                OPINION & ORDER

    v.

                                                     13-cv-453-wmc

TRAVIS BITTLEMAN and DAVID
LIPINSKI,

                Defendants.

---

    Plaintiff Darrin A. Gruenberg has been granted leave to proceed *in forma pauperis* on Eighth Amendment claims that (1) defendant Travis Bittleman violently twisted his arm without provocation and (2) defendant David Lipinski was deliberately indifferent to the extremely cold conditions in Gruenberg's controlled segregation cell. (Dkt. #10.) Gruenberg has since filed various motions, including: (1) two motions to reconsider the denial of leave to proceed on other claims in this court's screening order (dkt. ##11, 12); (2) a motion to strike defendants' affirmative defenses pursuant to Fed. R. Civ. P. 12(f) (dkt. #17); and (3) two motions for assistance in recruiting counsel (dkt. ##20, 25). The court takes up each of those motions in this order.

OPINION

**I. Motions to Reconsider**

    **A. Substantive Due Process**

    Gruenberg first asks this court to reinstate his *substantive* due process claim for excessive force. The court previously declined to let him proceed on that theory because, as the Supreme Court has explained, "[w]here a particular Amendment provides an explicit

textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (internal quotation marks omitted). Moreover, the Seventh Circuit has confirmed that *Graham* and its progeny foreclose § 1983 plaintiffs from pursuing claims under the rubric of substantive due process when those claims are "covered by" other Amendments. *See, e.g.*, *Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 471-72 (7th Cir. 1998).

"A claim of excessive force, like the one at issue here, is, at bottom one that seeks to impose liability for 'physically abusive governmental conduct.'" *Kinglsey v. Hendrickson*, 744 F.2d 443, 448 (7th Cir. 2014) (quoting *Graham*, 490 U.S. at 394). "The right to be free from such abuse derives from various provisions of the Bill of Rights. . . . [T]he Eighth Amendment applies when, following the constitutional guarantees of our criminal process, there has been an adjudication of guilt and an imposition of sentence." *Id.* Finally, the Seventh Circuit reaffirmed that "we evaluate a claim of excessive force not under 'some generalized excessive force standard,' but 'by reference to the specific constitutional standard which governs that right.'" *Id.* at 449 (quoting *Graham*, 490 U.S. at 394).

Given this controlling case law, the court can see no error in denying Gruenberg leave to proceed on a substantive due process claim here. Some of the cases Gruenberg cites in support of his motion have no bearing on whether he can maintain this particular due process claim. *See, e.g.*, *Duckworth v. Franzen*, 780 F.2d 645, 651 (7th Cir. 1985) (freedom from cruel and unusual punishment has been incorporated against the states by the Fourteenth Amendment's Due Process Clause); *United States ex rel. Caruso v. U.S. Bd. of*

2

*Parole*, 570 F.2d 1150, 1157 (3d Cir. 1978) ("liberty" generally includes personal security from physical violence); *Bonner v. Coughlin*, 517 F.2d 1311, 1316 (7th Cir. 1975) (prisoners are protected by the Due Process Clause). Others *do* analyze claims of excessive force under the rubric of due process, but those cases apply the four-part substantive due process test articulated in *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973), and later explicitly *rejected* in *Graham*. *See Graham*, 490 U.S. at 393-94 (rejecting the indiscriminate application of four-part *Johnson* test to all excessive force claims and holding that in most instances, an excessive force suit involves protections under the Fourth or Eighth Amendments); *Freeman v. Franzen*, 695 F.2d 485, 492 (7th Cir. 1982) (applying *Johnson* test); *McRorie v. Shimoda*, 795 F.2d 780, 785 (9th Cir. 1986) (applying *Johnson* test). Thus, Gruenberg has offered no reason to reconsider this court's conclusions with respect to substantive due process, and his motion is denied in that respect.

### B. State Law Claims

Gruenberg also asks the court to allow him to proceed on a "pendent state law tort claim." While it is not entirely clear from the motion to reconsider to what tort claim he refers, a review of his original complaint reveals several sources of state law that Gruenberg apparently contends the defendants violated through their actions.

Gruenberg alleges that Bittleman violated various DOC work rules: Wis. Adm. Code § DOC 306.07(1), which forbids corporal punishment of inmates; and Wis. Stat. §§ 940.19(1) (criminal battery) and 940.29 (abuse of residents of penal facilities). (*See* Am. Compl. (dkt. #6) ¶ 88.) Gruenberg has offered no authority, and the court has found none, that suggests he has a right to bring a civil suit under any of those provisions. *See, e.g., Ludke*

3

*v. Kettle Moraine Corr. Inst.*, No. 11-CV-00506, 2011 WL 5125923, at *5 (E.D. Wis. Oct. 28, 2011) (prisoner could not sue under § 940.29 or under state DOC regulations); *Henderson v. Belfuel*, No. 03-C-729-C, 2004 WL 602642, at *5 (W.D. Wis. Mar. 16, 2004) (no right for individual recovery in a civil suit under § 940.19).  Thus, he may not proceed on any of those claims.

In addition, Gruenberg also alleges that both Bittleman and Lipinski violated Wis. Stat. § 302.08, which provides that "wardens and the superintendents and all prison officials shall uniformly treat the inmates with kindness."  Again, he offers no authority that this statute permits an individual to recover damages in a civil suit.  In fact, § 302.08 appears to have been invoked in authorizing various DOC regulations, which, as previously mentioned, do not themselves give rise to a private cause of action.  *See, e.g.*, Wis. Adm. Code § DOC 302.01 (chapter adopted for implementation of § 302.08, among other sections); *id.* at § DOC 303.01(1) (same); *id.* at § DOC 308.02 (adopted to interpret § 302.08); *id.* at § DOC 309.01 (same); *id.* at § DOC 311.02 (same).  Absent some evidence that § 302.08 creates a private right of action, the court will not allow Gruenberg to proceed on this claim.

### C. Procedural Due Process

Finally, Gruenberg asks the court to reconsider his procedural due process claim, which the court declined to allow him to pursue on the grounds that he had not alleged a liberty interest.  Specifically, Gruenberg argues that his 24-hour placement in controlled segregation without a prior hearing violated procedural due process because he had to

"move around on cold, hard concrete to keep warm[,] thus causing pain and injury." (Mot. for Reconsideration (dkt. #12) 1.)

To state a claim for procedural due process, a prisoner must show that he has a life, liberty or property interest with which the state has interfered. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). Usually, "an inmate's liberty interest in avoiding segregation [is] very limited or even nonexistent." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). However, "a liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Id.* at 697-98 (emphasis in original). Without minimizing what must have been a harsh and difficult night in segregation, the Seventh Circuit has held that "even extremely harsh prison conditions may not be so 'atypical' as to create the liberty interest the [Supreme] Court contemplated [in *Sandin v. Conner*, 515 U.S. 472 (1995)]." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008).

Gruenberg cites to *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006), in support of his argument that the conditions in controlled segregation were sufficiently harsh to establish a liberty interest. He argues that the conditions in controlled segregation were "virtually the same" as those in *Gillis*, requiring a jury to decide whether they implicated a liberty interest.

As a purely factual matter, this is incorrect, at least based on the allegations Gruenberg has made in his complaint. Gruenberg alleges that the cell in which he was confined for about 24 hours was "not adequately warm"; that it caused pain and trauma to the bottoms of his feet and buttocks; that he was "unreasonably cold"; and that he had only a hard rubber mat and "skimpy segregation smock" for comfort (*see* Am. Compl. (dkt. #6)

5

¶¶ 166, 168, 175, 205). In rather stark contrast, the program in *Gillis* involved the following conditions, extended over days:

> In stage one, Gillis was deprived of nearly all human contact and sensory stimuli. He had no property in his cell and no privileges. He was stark naked and had no mattress or other bedding. He slept naked on the concrete floor or on the concrete slab that is the bed. He tried to sleep next to a heat vent, but the air from the vent was cool. He says he was so cold that he had to walk around his small cell some 14 hours a day trying to stay warm. He claims he developed sores on his feet from pacing and on his body from sleeping on the concrete and that his request for soap to clean his sores was denied. . . . Gillis was fed nutri-loaf – basically a ground-up block of food. He was denied mail, visitors, phone privileges, canteen items, writing materials, and use of the law library. There is a dispute of fact over the amount of toilet paper he received. He says he received it on only five occasions during the entire time he was in the BMP, and then it was four squares at a time.

*Gillis*, 468 F.3d at 490-91.

Without allegations like those in *Gillis*, which allowed for the inference that the program "impose[d] an atypical and significant hardship even measured against the ordinary incidents of life at Supermax," *id.* at 495, this court must adhere to its initial ruling that Gruenberg has not alleged a liberty interest. In *Townsend*, for instance, the Seventh Circuit held that the plaintiff had not established a liberty interest where he was placed in total lock-up for *59* days in conditions that "were less than hospitable" and forced to sleep on a wet and moldy mattress. *Townsend*, 522 F.3d at 722. In *Earl v. Racine Cnty. Jail*, 718 F.3d 689 (7th Cir. 2013), the court likewise found that five days on suicide watch, where the plaintiff was constantly monitored, allowed limited possessions, dressed in a suicide-proof gown to which he suffered an allergic reaction and kept in continuous light for the first 24 hours, did not deprive Earl of a liberty interest. *Id.* at 691. Only conditions that are

"*far more restrictive*," the court held, implicate an inmate's liberty interests. *Id.* (emphasis added). At least by comparison, the court does not believe 24 hours in a cold cell meets that criterion, and so Gruenberg's motion to reconsider his procedural due process claim will be denied.

## II. Motion to Strike Affirmative Defenses

Gruenberg also filed a motion to strike all but one of defendants' defenses under Fed. R. Civ. P. 12(f). Such a motion is appropriate only where "the defense is frivolous or clearly presents no bona fide issue of fact or law." *Prudential Ins. Co. of Am. v. Marine Nat'l Exchange Bank*, 55 F.R.D. 436, 438 (E.D. Wis. 1972). Before granting a motion to strike, "the Court must 'be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" *In re Midway Airlines, Inc.*, 175 B.R. 239, 242 (Bankr. N.D. Ill. 1994) (applying Fed. R. Civ. P. 12(f) (quoting *Lirtzman v. Spiegel, Inc.*, 493 F. Supp. 1029, 1031 (N.D. Ill. 1980)). Gruenberg has offered no specific argument on any of these defenses, stating only that they are "patently defective and non-viable." (Mot. Strike (dkt. #17) 1.) Nevertheless, the court reviews them briefly to determine whether any of the asserted defenses "[can]not succeed under any circumstances." *Mobley v. Kelly Kean Nissan, Inc.*, 864 F. Supp. 726, 732 (N.D. Ill. 1993).

As a preliminary matter, defendants have agreed to withdraw their third defense of Eleventh Amendment immunity, recognizing that Gruenberg has sued them in their individual, rather than official capacities. They argue, however, that the remaining defenses Gruenberg challenges are potentially viable. First, with respect to defense (1), failure to

state a claim on which relief can be granted, this court noted at screening that Gruenberg's allegations were "barely" enough to state a condition of confinement claim under the Eighth Amendment. The defendants argue that it this statement alone justifies they be allowed an opportunity to show that Gruenberg cannot actually state such a claim. The court agrees and will allow that defense to remain. Furthermore, "certain affirmative defenses like failure to exhaust administrative remedies . . . or qualified immunity may be argued in a motion to dismiss." *Seabolt v. Champagne*, No. 05-C-1240, 2006 WL 3192511, at *2 (E.D. Wis. Nov. 2, 2006). Defendants have preserved their right to argue those defenses at the motion to dismiss stage, and the court cannot say they are frivolous on their face, either.

With respect to defense (4), failure to mitigate damages, defendants argue that they may be able to show that Gruenberg could have reduced any harm he suffered but failed to do so. Given the nature of Gruenberg's claims, this presents a bona fide issue of fact relevant, at a minimum, to damages, and so the court declines to strike that defense.

Similarly, defense (5), which states that Gruenberg has failed to exhaust his administrative remedies, is certainly a viable defense and is by no means "patently defective." Thus, the motion to strike defense (5) will also be denied.

Finally, defense (6) is not a defense at all. Rather it is an attempt to reserve the right to assert other affirmative defenses. "Affirmative defenses – like complaints – are protected by the direction of Rule 15(a) that courts are to grant leave to amend pleadings 'freely . . . when justice so requires.'" *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982). Therefore, while unnecessary, this "reservation of rights" is not patently defective and will not be stricken. *See Seabolt*, 2006 WL 3192511, at *5 (declining to strike reservation of right to name additional affirmative defenses).

**III. Motions for Assistance in Recruiting Counsel**

Finally, Gruenberg asks the court to assist him in recruiting counsel for this case as well as for the two other cases he has pending before this court. While he has complied with the requirement that he first make reasonable efforts to find counsel on his own for each case by submitting rejection letters from four attorneys (*see* dkt. #20-2), as further explained in this court's opinion of today in Case No. 13-cv-095-wmc, Gruenberg's stated reason as to why he cannot litigate this case on his own -- a lack of funding -- is not a proper reason to recruit *pro bono* counsel. Given that Gruenberg is certainly *capable* of presenting this case to the court on his own (indeed, he does not argue otherwise), the court will deny his motions for counsel at this time.

ORDER

IT IS ORDERED that:

1) Plaintiff Darrin A. Gruenberg's motions for reconsideration (dkt. ##11, 12) are DENIED;

2) Plaintiff's motion to strike defenses (dkt. #17) is DENIED AS MOOT with respect to defense (3) and DENIED in all other respects; and

3) Plaintiff's motions for assistance in recruiting counsel (dkt. ##20, 25) are DENIED.

Entered this 29th day of July, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

9